and we'll next hear argument in Michelle Himes and Jose Riera v. Somatics and Necta Corporation. Good morning and may it please the court. The overarching issue presented in this case, your honors, is simple. Do we want to live in a society where the patient's consent is relevant in determining if she's subjected to a dangerous medical procedure such as electroshock therapy or do we want to be in a society where the consent of the patient is irrelevant or to use Somatics' words, a red herring. Appellants Michelle Hines and Marcia Benjamin respectfully submit that under established California law, the consent of the patient is paramount in determining if she is subjected and ultimately exposed to ECT and its various complications. In granting defendant's motion to for summary judgment under the auspices of the learned intermediary doctrine, the district court failed to take into account the consent of the patients and instead impermissibly inferred and held that both Ms. Himes and Ms. Benjamin would have been administered ECT even though both patients provided uncontroverted testimony that had they been informed of the risks of brain injury and permanent memory loss by their respective doctors, they would not have consented to ECT and thus would not have been administered ECT and thus would not have sustained injury as a result of the ECT. That factual pattern demonstrates not a causation under California law. If we assume, let me ask you this, if we assume that the learned intermediary doctrine applies to this case, we don't really have a California case that says that there's a failure to warn issue if the stronger warnings would have caused the prescribing physician to take the treatment. We only have cases indicating that the stronger warning would have caused the physician not to prescribe the treatment. Is this an issue that we should certify to the California Supreme Court and get their view as to whether it's enough if the stronger warning would have caused the prescribing physician to pass on the warning to the patient and the patient would have declined treatment? If your honors feel that that issue is debatable under California law, then I have no problem in your honor certifying the issue for this California Supreme Court because I believe the California Supreme Court, based on cases and how it's treated this area of the law, would have no trouble in determining that if once the doctor passes on the warning to the patient and the patient testifies that he or she would not have taken the drug or agreed to the surgery, that establishes causation. And the reason I say that, Judge Okuda, is ultimately the duty is owed to the patient. So California law, I mean going back to first year law school, tort claim has four elements, duty, breach, causation, damages. California law is clear that a manufacturer owes a duty of care to consumers that use its products. California Supreme Court has held that pharmaceutical companies and medical device companies also owe a duty of care to patients that use their products. If there was no duty owned to the patient, then no patient would ever have a right to bring a claim in tort. Because the first element of a tort claim would be missing. So it's abundantly clear that a duty is owed. Now the California Supreme Court in multiple occasions has held that that duty can be discharged by, in lieu of providing a warning to the patient, to provide it to the doctor. And the language always uses the word if. If the warning is given to the doctor, then there's no to ultimately warn the patient. And that, in fact, as recently as 2017, Your Honor, in a case we cited in our brief, TH versus Novartis, this is the California Supreme Court. I'm just going to quote the court. If the manufacturer provides an adequate warning to the prescribing physician, the manufacturer need not communicate a warning directly to the patient who uses the drug. So again, if a warning is given, then you don't need to warn the consumer. Here, it is clear, unrefuted, and the trial court, district court, found that Somatics did not provide any warnings concerning permanent memory loss and brain injury to the treaters in this case. And the treaters testified that they were not aware of these risks, and that they testified, further testified, that had they known of these risks, they would have shared those risks with Ms. Himes and Ms. Benjamin. And both clients, both patients testified that had they been informed of those risks, they would not have consented. With respect to Ms. Benjamin, her doctor testified that he or she doesn't rely on any really disclosures from manufacturers, that he or she doesn't pay much attention to it. Is there causation there if the doctor testified that a manufacturer disclosures really aren't relevant to the doctor? Just, Judge Lee, I believe the record indicated, and I took the deposition of Dr. Franco, he does indeed rely on warnings and information. He testified, Dr. Franco testified, he read the warning, he read the material that Somatics provided, he relied upon it, and he also testified that had warnings been provided through other means that doctors rely upon, he would have relied upon those and altered his informed consent documents. That was in the record, and I believe he quoted the testimony in our brief, and certainly in our reply brief. It seems that, at least, from the record, it says Coy doesn't pay terribly much attention to literature from the manufacturers. That was when defense counsel was asking him questions, but when I asked him questions, he provided testimony that he doesn't rely upon it, and it formulated and would have passed on the warnings, Your Honor. And at this stage of the case and the procedural posture that we're in, if there is a dispute, that goes to the jury, Your Honor. All inferences have to be resolved in our favor, in favor of the plaintiff at this stage. On your rebuttal, if you can give me some record references, you don't have to give it to me now, but on rebuttal, if you can give that to me, that would be helpful. Absolutely. Absolutely, Your Honor. I want to go back to your answer to Judge Akuta's question a few minutes ago. Presumably, you think it's not debatable that the theory you're advancing about a doctor changing the extent of warnings given to the patient is legitimate under California law. What's your best authority for that? I mean, there's a number of district court decisions that have, you know, held that, Your Honor, and we cited them. Himes, excuse me, I apologize, Hill, Stanley, Georges, all those decision cases, Your Honor, and there they were dealing with- Those aren't California cases, so what is your best California authority? Specific on California, it has not, as Judge Akuta noted, directly addressed this issue in terms of either against me or in our favor. What California has stated is that the duty exists, and at the ultimate end of the day, Your Honor, this is a failure to warn case. So the failure to warn is being brought by the patient, and California Supreme Court, on multiple instances, has held our law, we want consumers to know about risks so they can make an informed decision. So if you look at the pharmaceutical cases such as Stevens, Carlin, Brown, the TH versus Novartis, they all discuss that. And then when you look at, for example, a case like a medical malpractice case where the court was looking into what kind of warning should a doctor give to a patient, I'm talking about Cobbs versus Grant, the court was emphatic that at the end of the day, the autonomy of the patient is paramount, that the patient is the one who gets to make the decision as to whether he or she undergoes the treatment or accepts the prescription. There's phenomenal quotes in Cobbs, Your Honor, where the court addresses this issue and says, once the doctor has passed on the warning, he's performed his expert duty. And the ultimate decision as to whether I want to have the surgery, do I want my kids to have the surgery, do I want my kids to be exposed to this drug, or myself to be exposed to this drug. Constitution provides, Your Honor, law provides, common sense provides, all the way back from long ago, that that belongs to the plaintiff, to the patient, ultimately. No one is allowed to make a decision for the patient. And the only narrow circumstances are if you're dealing with somebody who is involuntarily committed, which we don't have here, or we're dealing with a situation where it's an emergency surgery, somebody's unconscious and the doctor needs to perform surgery, so they can't get consent. And on top of that, Your Honors, we're dealing here with ECT. ECT is a treatment that requires the doctor to put you under anesthesia and apply electricity to your brain at one-fifth the voltage of the amount that we use to kill inmates in the electric chair. And to say that the California Supreme Court would say that the patient cannot play a role in that decision would go against everything, everything that our case law stands for, Your Honors, everything. I mean, California, Your Honor, going back to Justice Treanor from the 1940s, has been the leader in strict liability, in allowing plaintiffs to have access to courts through, you know, lowering the burden of proof, allowing strict liability to applying to products, and then eventually in Carlin, allowing it to apply to drugs. We have cases where the rules, whenever the defendant causes harm, they're not allowed to rely upon intervening causation because of the negligence of a third party. We cite to those cases, Your Honor, including TH versus Novartis. And we have cases where, there's a very famous case, for example, it's not cited in our briefs, Your Honor, Haft versus Lone Pine Hotel, 3 Cal 3rd 756. In that case, a pool neglected to have a lifeguard and a warning sign at their pool, and a father and son drank. Negligence was admitted because they didn't have the lifeguard and the sign, but the and plaintiffs, because they both drowned, nobody knew how this injury happened or what occurred. And so the hotel managers were saying, well, then you haven't proved causation. The Supreme Court in that case held, Your Honors, no, because you did not have a lifeguard and therefore there wasn't anybody to observe what occurred. And because you did not have a post warning people that there is no lifeguard, we're going to place the burden of causation on you. So that's where California law is not... Sorry, even if we accept your position, I assume we would have to apply some kind of objective reasonableness standard for patient consent, right? Because I mean, it wouldn't seem whether they would have consented ex ante. And that's a very good point, Your Honor. And some courts in other jurisdictions do have a reasonable person standard where they would say it was the reasonable person. I think in California, and we cite to this in one of the footnotes in our reply brief, the Colombo case, I believe, where the court held, no, the self-serving affidavit or declaration of the plaintiff is sufficient. In that case, it was a jet ski case that didn't have a specific warning and plaintiff testified, had I known that warning, I would not have gone on the jet ski, had I been warned of X, Y, and Z. And the jet ski manufacturer said, well, that's self-serving, you're not allowed to say that after the fact. And the court had no problem with credibility. Here's a little bit different here. Presumably, your opposing counsel would say this was a matter of last resort for these patients. So in that kind of situation, maybe objectively, some people would be willing to take on that risk. I think it's quite different from going on jet skiing. Well, it's not a matter of, it's still, even in cases involving surgery, your honors, and even in cases, for example, all of the Stanley, George's, Hill cases, those involve prescription drugs that were for treatment of cancer. And the court still said that the patient's consent is important, your honor. Here, we're dealing with brain damage and permanent memory loss, the highest level of injury one can sustain. And Ms. Benjamin, for example, was suffering from anxiety and was trying to wean off of a prior prescription that her prior doctor had put her on. Again, these were not involuntarily admitted patients where the doctor gets to make the decision by going to court. I have one minute left, your honor. May I reserve that for rebuttal unless anybody has any questions? All right. We'll hear from the other side. Thank you, your honors. May it please the court. I'm Jonathan Fryman of Wigan and Dana for Somatics Diapoli here. I found it striking that in the last 14 minutes, we didn't hear mention of this court's binding precedent in the Motis decision or anything about the Latiolus decision that followed the Motis decision, or in this case, this court's precedential decision in Wendell. In all of those courts, the question was, how is the causation prong of the learned intermediary doctrine satisfied under California law? And in Motis, it was a very clear district decision that goes on at length and relates that the doctor said if he'd received enhanced warnings, he would have passed them on to the patient. The district court says that is not enough to satisfy the causation prong of the learned intermediary doctrine under California law. This court affirms in a precedential opinion in Motis. And this court quite specifically says, because the district court there described the facts of this case in detail, we repeat only the essential ones here. And then after making its holding, saying a product defect claim based on insufficient warnings cannot survive summary judgment if stronger warnings would not have altered the conduct of the prescribing physician. It says on the record adduced during discovery, and that's the record where the doctor said, I would have passed the warnings along. On that record, Motis failed to establish proof that stronger warnings would have changed her husband's treatment or averted his suicide. I was struck that Motis relied primarily on the Second Circuit in reaching that decision, didn't rely on California law or the California Supreme Court precedent. And so I'd ask the same question I asked opposing counsel. Is this an issue that we should certify to the California Supreme Court to see whether it agrees with that rule that we stated in Motis? And even in Motis, we didn't say what altered the conduct meant, whether that meant altered the prescribing behavior or also altered the warnings that he gave to the patient. I'll answer that in two ways, Judge Okuda. First of all, as I said, the record in Motis from the district court decision was clear that it was the alteration of the prescribing decision. And that was also true in the Laviolus decision that your honor was a part of the panel on, which followed Motis. I would say as to the question of certification, we have three decisions from this court, three different panels of this court that have looked at this question and addressed it without certifying it to California. So at this point, there's a significant track record in this court. And I think this panel is bound by the prior decision. Have we addressed though, altering the warning conduct of the physician as opposed to prescribing conduct? I don't think we've ruled on that or said it's only the prescribing conduct. And I don't think we've addressed whether it would include the warning conduct. Is that correct? Well, it's correct that the language of the public decisions does not make that particular distinction that your honor is asking about. It's also clear that what was at issue in all of these cases was the prescribing conduct. And it's also clear that in two out of these three cases, there were doctors who said that they would pass the warnings on and that was found not sufficient and this court affirmed. I think that's a very significant wall of precedent in the circuit regarding California law on this issue. And it is completely in harmony with the way that the second circuit has used California law as well. That is there's not divisions among circuits on California law. And I think this makes sense. California is relieved about that. No doubt, your honor. I think it's important for us to focus on two different aspects of the causation inquiry, which plaintiffs need to satisfy. It's their burden to prove not only the breach of duty as opposing counsel noted, which would be the inadequate warnings, but also causation. And in order to establish causation here, they need to prove two things. One, and this goes to a question that Judge Lee asked opposing counsel. One, did the doctors read the semantics? Did they rely on it? Were they going to use it in any way? And number two, would that have changed their prescribing conduct? So we've been focusing Judge Ikuda on the second of those, would it have changed their prescribing conduct? And I will like to say some more about that, but I want to turn just for a moment to the inquiry that Judge Lee made of opposing counsel. And I think the record here is clear that the doctors said they didn't rely on the disclosures that were sent to them by semantics. And I will give you record sites for that. I don't get a rebuttal, so I'll give them to you now. Page 1036 of volume five of the excerpts of record, that's Dr. Frankel. And he says that he never relied on any disclosure from semantics. So could you address, I assume that opposing counsel will cite ER 364, where Dr. Frankel answers the question, if semantics had informed you that ECT could be linked to permanent brain damage in some patients, is that information that you would advise patients about, doctor? And he answered, if it were the case, I would definitely advise patients in terms of giving informed consent. So that seemed to me the clearest place that was briefed by opposing counsel, where Dr. Frankel said it would change his warning. And so opposing counsel says, that's enough for a genuine issue of material fact. Could you respond to that? Absolutely. I don't think it creates a genuine issue of material fact at all, because it answers a different question. This question goes to whether if in fact he had read what semantics gave him, would that have changed the way he dealt with the patient? But he's already testified that he doesn't read what semantics gives him. He doesn't rely on it. He doesn't look at it. So it doesn't matter what's in there. You can't inadequately warn someone who isn't reading anything that you're warning them of. So that's a break in the causation chain. They seem contradictory to me, because the question was, if semantics had informed you, would you have advised the patient? And he says, yes. Then later in the sites that you gave at 1036, 1044, he seems to say, well, I don't normally read what the semantics gives me. So in case of that sort of tension in the deposition testimony, is an opposing counsel right that there's a issue of disputed fact? I don't think so. I think the question that Your Honor is pointing to on page 364 is a hypothetical question. If you read what you got, even though you've already testified that you don't, would it have changed what you do? And I should say that this all relates to Dr. Frankel on Dr. Fidelio's with regard to Ms. Himes. There's even more in the testimony, making clear that he doesn't rely on it at all. And both of the doctors testified to the fact that any warnings they would have received, they would have taken those warnings and put them in the context of their own clinical experiences and what they had seen in their clinical practices over decades, and that they hadn't seen this. And their theory, their theory that, well, the doctors would have read this, even though there's no evidence that they did read it, and that the doctors would have then passed along readings, I'm sorry, recommendations, warnings that would have changed the treatment. It's based purely on speculation, because of course the warnings themselves are not passed along in their raw, unadulterated form. The entire purpose of the learned intermediary doctrine is that there is somebody learned who is mediating the passing along of warnings. They're saying, yes, you know, I read this and the manufacturer says that there is this risk, but I've got to tell you in my 30 years of practice, I've never seen it. I don't know where it's coming from. I haven't seen it in the literature. I haven't heard about it at the conferences. Don't know why it's there, but they say it's a risk. I think you need this treatment because you're suicidal. You've tried to kill yourself. Your baby is starving. And I think this is the only thing that's left for us to try to save you. So this is based on a series of that passing along warnings is enough. If I may ask about Ms. Himes, her doctor testified, perhaps in a little vague and qualified way, that the doctor would be, you know, quote, reluctant to use it if we knew of it, referring to danger of brain injuries. I mean, isn't that enough to preclude summary judgment whether this doctor would have altered his or her conduct? No, he was also unqualified in saying that it didn't cause brain injuries. He had no reason to think it caused brain injuries. And so I guess in this specific case, but I mean, you know, if we're thinking of more of a objective, reasonable standard here with that language of testimony, but reluctant to use it if we knew of this warning, again, it's a little bit of qualified statement and a little bit vague, but you know, for summary judgment purposes, I mean, isn't that enough to preclude Well, I understand the question, Judge Lee. I think that the testimony is consistent from both of the doctors here that everyone is reluctant to use ECT. They're reluctant to use it because it is in fact, the last ditch measure. It's the when everything else fails, this is what you use. So everyone is reluctant up to that point. The testimony is clear, though, that regardless of the side effects, because the situation was so dire, Dr. Fagelio said, there's no question he was unequivocal about this. There's no question that he would have prescribed this, it would not have altered his prescribing decision at all. He was saving someone's life, someone who was suicidal, and whose own baby was starving because she couldn't feed her. That in his mind, this was the only thing left to save her. And so I don't think there's any disputed question of material fact as to what his prescribing decision would have been. I want to note something which I think is probably obvious to the entire panel, but is worth mentioning. There's, of course, an inherent tension behind the notion of informed consent and the notion of a learned intermediary. Informed consent says that a patient gets to make their own decisions about their own medical treatment. But the learned intermediary doctrine says, in the particular context of failure to warn cases, that these warnings about drugs are so complex and difficult for us as non-doctors to understand that we need a learned intermediary. We need someone who's there who interprets these, because otherwise, we'll sometimes be too afraid to take the medicine or get the treatment through devices that we need to save our own lives, or to significantly increase how we live, how we flourish. And so there's a balance in California law between informed consent and the learned intermediary doctrine. What opposing counsel is asking you to do is to knock out the proximate cause inquiry, as it has been interpreted under California law, to take away that mediation and to treat doctors like mere messengers. They're not learned and they're not mediators. They're just people who say they would have passed along the warnings. And if they say they would have passed along the warnings, then the patient imagines, in a hypothetical speculative world, what decision they would have made, and says they wouldn't have gotten the treatment, and then they've established causation. That's not what this court's prior decisions in Modus Laviolus and Wendell have held. And this court should not radically reorient California law by taking out one of these two pillars, which admittedly are in tension, but are part of the harmony under California law in this context. If there are no further questions, I will thank your honors. All right, apparently not. Thank you. And I think opposing counsel, you have a few minutes left. Yes, your honors. Apologies. Yes, your honors. First off, Judge Lee, Judge Acudo answered the question that you had asked for the citation. It was pages 363 and 364 of the record. In terms of Dr. Frankel, which is Ms. Benjamin's doctor, he also unequivocally testified that he read the label and he was provided with the warning, and that is at page 351. In fact, somatics doesn't even make any arguments in their brief that Dr. Frankel was not exposed to the warning, to the label. I want to make one point clear, justices, two points clear. One, and we leave this out in the brief, the warning, your honors, which goes with the manual at the outset, is not a litmus test. California law is clear, even if one looks at the Casey instructions in 1205 for a failure to warn, that there's a continuing duty to warn. So as the science develops and as the manufacturer learns, they have a responsibility to continue to warn, and one of those is through dear doctor letters and other information that they give to doctors. For example, in Wendell, a dear doctor letter was given to the doctor. So the label is not litmus test. As long as the doctors would have relied on warnings, and here both doctors testified that they would have relied and would have passed on the warning. In fact, Dr. Fidelio even said he would have been reluctant to prescribe it. The second issue, your honor, is the reason to prescribe, whether the doctor prescribes or not, is not the end of the story, is doctors prescribe medication and recommend surgery all the time, but the patient ultimately decides whether they want to fill the prescription and swallow the pill, or if they're going to sign the consent document to say, yes, put me under anesthesia and apply electricity to my brain. The patient makes that choice. Doctor, even though these doctors perhaps would have prescribed, they would have given warning, but still would have prescribed, the ultimate choice is with the doctor, with the patient. And therefore, that's why the district court committed grave error when it inferred that these doctors would have administered ECT notwithstanding the patient's refusal. That would be a violation of California statutory law, your honor. There's statutes governing ECTs that prohibit that. That would be battery, it would be a crime. You're over time now, please wrap up. So to wrap up, your honors, I just, at the end of the day, it's a failure to acknowledge, does not dispute that it failed to warn. Had it warned, both doctors testified they would have relayed that warning to Ms. Himes and Ms. Benjamin, and armed with that warning, both patients would not have agreed to this treatment, and therefore plaintiffs have more than established causation under these facts. Unless there's any further questions, I want to thank the panel for your time and questions. All right, the case of Himes and Riera versus Somatics and MECTA Corporation is submitted, and we're adjourned for this session.
judges: IKUTA, LEE, FORREST